**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| ROHRER CORPORATION, ) | CASE NO. 1:10-cv-958 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | NANCY A. VECCHIARELLI |
| ) | |
| DANE ELECTRIC, ) | |
| ) | **MEMORANDUM OPINION AND** |
| Defendant. ) | **ORDER** |

This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties. (Doc. No. 20.)  Before the Court is Defendant Dane Electric's ("Dane") Motion for Partial Summary Judgment.  (Doc. No. 46.)  Plaintiff Rohrer Corporation ("Rohrer") opposes.  (Doc. No. 51.)  For the reasons set forth below, Dane's Motion for Partial Summary Judgment is DENIED.

**I.  BACKGROUND**

On October 12, 2010, Rohrer filed its Second Amended Complaint.  (Doc. No. 34.)  The Second Amended Complaint alleges four Counts: (1) Breach of Settlement Agreement; (2) Breach of Contract; (3) Action on Account; and (4) Unjust Enrichment. (Doc. No. 34.)  On November 3, 2010, Dane filed its Answer to the Second Amended

Complaint.  (Doc. No. 36.)  On February 3, 2011, Dane filed its "Motion for Summary Judgment."  (Doc. No. 46.)  On March 4, 2010, Rohrer filed its Brief in Opposition to Dane's Motion for Summary Judgment.  (Doc. No. 51.)  On March 21, 2011, Dane filed its Reply Brief.  (Doc. No. 52.)  On March 28, 2011, Rohrer filed a Sur-Reply Brief upon the Court's permission.  (Doc. No. 54.)

For the following reasons, Dane's Motion for Summary Judgment will be construed as a motion for partial summary judgment.  Rohrer argues that Dane is not entitled to judgment on Rohrer's entire Second Amended Complaint because Dane only challenges Count II in its Motion for Summary Judgment.  (Pl.'s Opp'n 1.)  Dane contends, however, that its failure to address Counts I, III, and IV of the Second Amended Complaint is of no consequence because "these claims have no legal significance in this case unless Rohrer can present evidence to rebut Dane-Elec's primary claim that the parties had entered into an enforceable agreement in December of 2008 . . . for 6-10 million packaging products at an agreed upon price point."  (Pl.'s Reply 10.)  Dane does not explain how a determination favorable to Dane on Count II would moot Counts I, III, and IV.  Because Dane's Motion addresses only one out of the four Counts in the Second Amended Complaint and Dane does not explain how the other Counts are irrelevant or would otherwise be disposed of upon a favorable determination on Count II, Dane's Motion constitutes a motion for partial summary judgment regarding only Count II.  Therefore, the following facts will relate only to Count II, that is, the circumstances of whether the parties entered a contract in December 2008.

The following material facts are undisputed unless otherwise indicated.[1]  Rohrer manufactures certain packaging products ("goods").  Between October and December 2008, Dane engaged in business negotiations with Rohrer to purchase Rohrer's goods.  On December 5, 2008, Bill Duncan, National Account Manager at Rohrer, sent Cathy Maruska, Manager of Purchasing and Planning at Dane, an email that provided the following information:

> Cathy---------The following confirms to you the cost per package on the two sizes we have discussed.  5 x 7 and 3.5 x 6.
>
> Blister Guard / Safe Pack (IP / Valeron) 16 pt Printed 4 colors front and 1 color back (front card will be 4 colors / 0 back card will be 4 colors / 1) Die cut front cards with internal for R-Pet Blister.
>
> Based upon 500,000 completed packages
> 5 x 7 Card (2 piece card)         6.27 Cents
> R-Pet Blister 15 Mil              3.23 Cents
> Total                             9.50 Cents
>
> Based upon 250,000 completed packages
> 3.5 x 6 Card (2 piece card)       3.5 Cents

---

[1] The following facts are derived from Dane's Motion for Partial Summary Judgment and Rohrer's Brief in Opposition.  Dane includes in its Reply Brief a more thorough explanation of the circumstances surrounding the alleged December 2008 contract, as well as new facts and citations to evidence, that clarify and further develop its argument.  (*See* Def.'s Reply 3-7.)  Dane also boldly asserts in its Reply that all of the facts it offers in support of its position are undisputed.  (Def.'s Reply 3.)  Rohrer objects in its Sur-Reply to Dane's presentation of new facts, contends that many of the facts *are* disputed, and notes that some of the facts are inaccurate.  (Pl.'s Reply 2-3.)  The new facts and arguments presented in Dane's Reply Brief will not be considered by the Court, as they should have been presented in Dane's Motion for Partial Summary Judgment, and because they have only served to confuse the proceedings in this case and required Rohrer to file a Sur-Reply Brief.  Rather, the Court will consider Dane's Reply Brief only to the extent that it addresses the arguments presented by Rohrer in its Brief in Opposition to Dane's Motion for Partial Summary Judgment.

| | |
|---|---|
| R-Pet Blister 15 Mil | 3.23 Cents |
| Total | 6.73 Cents |

> The pricing is combined total units per run Includes 1 combined Shipment per month Prepaid to Irvine. (cards and blisters) Tooling charges for printing and thermoforming are 50 % off previous quoted levels if ordered prior to December 31, 2008 Pre-Press charge per item remains at $45.00 each (one time charge)
>
> If you need additional information just give me a call[.]
>
> Thank you for the opportunity and we look forward to providing Dane-Elec in the years ahead.

(Cathy Maruska Decl. Ex. A, Def.'s Mot. Summ. J. Attach. 1; Bill Duncan Decl. Ex. 1, Pl.'s Opp'n Attach 4.) Dane subsequently sent purchase orders to Rohrer that indicated the quantity of goods Dane wished to purchase from Rohrer at the prices indicated in the December 5, 2008 email. Rohrer responded by sending Dane written order confirmation forms and shipped the goods to Dane. Dane received those goods. Rohrer's order confirmation forms confirmed the quantity of goods that Dane requested, but at a price higher than that indicated in the December 5, 2008 email.

Some time in February 2009, Rohrer notified Dane that it had mistakenly articulated the prices in the December 5, 2008 email as too low[2] and proposed higher prices for the goods that, Rohrer alleges, were still at a discount. Rohrer alleges that it insisted it could not offer its goods for the prices articulated in the December 5, 2008 email. Dane alleges that it refused at that time to pay more for the goods than the

---

[2] Rohrer also alleges that Dane knew the December 5, 2008 email prices were too low before Rohrer notified Dane, as one of Dane's European subsidiaries tried to obtain the same pricing as that in the December 5, 2008 email but was denied. (Pl.'s Opp'n 5, *citing* Michel Hassan Dep. 21:6-19, Pl.'s Opp'n Attach. 3, *and* Maruska Dep. Ex. E., Pl.'s Opp'n Attach. 6.)

prices indicated in the December 5, 2008 email.  Dane continued to send purchase orders to Rohrer for goods at the prices indicated in the December 5, 2008 email; Rohrer continued to ship goods to Dane with follow-up order confirmation forms and invoices indicating different, higher prices; and Dane continued to receive the goods.

Rohrer contends that Dane owes a balance of $334,096.98 on the goods it purchased from Rohrer.  (2d Amend. Compl. ¶ 17.)  Dane contends that it has paid for all of the goods it purchased from Rohrer at the allegedly agreed-upon prices from the December 5, 2008 email.  (Def.'s Mot. Partial Summ. J. 2.)

## II.  LAW AND ANALYSIS

### A.  Standard of Review

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party can meet this burden in two ways:  by presenting sufficient evidence to indicate there is no genuine issue of material fact; or by arguing that the nonmoving party, after adequate time for discovery, fails to show sufficient evidence to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial.  *See Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).  The trial

court has no duty to search the entire case record to establish that it is bereft of a genuine issue of material fact. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). The nonmoving party has an affirmative duty to direct the court's attention to specific evidence upon which it seeks to rely. *Al-Qudhai'een v. Am. W. Airlines, Inc.*, 267 F. Supp. 2d 841, 845 (S.D. Ohio 2003) (citing *In re Morris,* 260 F.3d 654, 665 (6th Cir. 2001)). The lack of such a response by the nonmoving party may result in an automatic grant of summary judgment. *Reeves v. Fox Television Network*, 983 F. Supp. 703, 709 (N.D. Ohio 1997).

In reviewing summary judgment motions, a court must view all facts and inferences drawn therefrom in a light most favorable to the nonmoving party. *Pachla v. Saunders Sys., Inc.*, 899 F.2d 496, 498 (6th Cir. 1990). However, the Court does not weigh the evidence or make credibility determinations. *Joostberns v. United Parcel Services, Inc.*, 166 F. App'x 783, 787 (6th Cir. 2006). Moreover, the mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient; there must be evidence on which the jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). In other words, the court should determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 251.

**B.     Whether The Parties Entered Into a Contract in December 2008**

The essential elements of a contract are an offer, acceptance, and consideration. *Helle v. Landmark, Inc.*, 15 Ohio App. 3d 1, 8, 472 N.E.2d 765, 773 (Ohio Ct. App.

-6-

1984). Dane construes the December 5, 2008 email as an offer from Rohrer to sell its goods to Dane for the prices articulated therein. Dane explains that "The pricing, quantity, quality, and shipping of the Goods were discussed during negotiations," and "After about two months, Rohrer and Dane . . . reached an agreement as to quantity and price of the Goods." (Def.'s Mot. Partial Summ. J. 3.) Then, "On December 5, 2008, Rohrer sent Dane-Elec a confirmation, via electronic mail, confirming [their] agreement, more specifically, the price and quantity of the Agreement." (Def.'s Mot. Partial Summ. J. 3, *citing* December 5, 2008 email, Maruska Decl. Ex. A.) Dane further explains that "A minimum quantity of six to ten million products was agreed" (Def.'s Mot. Partial Summ. J. 3.), and that Dane accepted Rohrer's alleged offer by sending "a written electronic communication" and following up with purchase orders, (Def.'s Mot. Partial Summ. J. 6). Dane concludes that a valid and enforceable contract was created by this process to purchase a minimum of six to ten million goods at the prices articulated in the December 5, 2008 email (*see* Def.'s Mot. Partial Summ. J. 6), and that the contract was never modified to include higher prices (Def.'s Mot. Partial Summ. J. 6-10).

Rohrer contends that the December 5, 2008 email was only a price quotation and, hence, an invitation for offers from Dane to buy Rohrer's goods at the given prices. (Pl.'s Opp'n 1.) Rohrer cites Cathy Maruska's deposition and Bill Duncan's declaration in support of its argument that there was never an agreement as to the quantity of goods to be purchased. (Pl.'s Opp'n 4, 10, 12 n.11, *citing* Maruska Dep. 22:18-19, 23:12-24:10, 108:23-25, *and* Duncan Decl. ¶ 8.) Rohrer cites to Michel Hassan's (Dane's President) and Cathy Maruska's depositions, as well as Bill Duncan's

-7-

declaration, in support of its contention that the six- to ten-million figure was used by Dane only as a hypothetical quantity to obtain a baseline comparison of bids from various companies. (Pl.'s Opp'n 10, *citing* Hassan Dep. 29:1-5; Pl.'s Opp'n 12 n.11, *citing* Hassan Dep. 24:1-5, 14-16, 29:1-5, Maruska Dep. 35:5-20, Duncan Decl. ¶ 8.) And Rohrer cites to Michel Hassan's deposition, Bill Duncan's declaration, and Dane's response to Rohrer's Request for Admission Number 12 in support of its contention that the parties never intended that the pricing in the December 5, 2008 email would be available to Dane for any specific period of time. (Pl.'s Opp'n 4, *citing* Hassan Dep. 29:9-14; Pl.'s Opp'n 10, *citing* Hassan Dep. 29:9-14 *and* Duncan Decl. ¶ 8; Pl.'s Reply 1-2, *citing* Resp. to Req. for Admis. No. 12.[3])

Rohrer contends that each of Dane's purchase orders were separate offers to purchase the requested number of goods, as they contained the crucial piece of information necessary to establish a contract for the sale of a particular number of goods: quantity. (Pl.'s Opp'n 12.) Furthermore, Rohrer contends that each of the order confirmation forms that it sent Dane in response to each of Dane's purchase orders were counter-offers containing the correct, higher price for the goods, and that Rohrer put Dane on notice of the higher pricing in February 2008. (Pl.'s Opp'n 2.) Rohrer concludes that Dane accepted the counter-offers at the higher prices by keeping

---

[3] Rohrer alleges that Dane's response to Rohrer's Request for Admission Number 12 supports its contention that the parties never intended that the prices in the December 5, 2008 email would be available for any duration of time. (Pl.'s Opp'n 10; Pl.'s Reply 1-2.) That Admission states, in relevant part, that "Defendant admits that Plaintiff and Defendant never executed a written document wherein both Plaintiff and Defendant agreed that Plaintiff would provide products to Defendant at a set price for a specific duration of time." (Resp. to Req. for Admis. No. 12, Pl.'s Opp'n Ex. H.)

the goods without objecting to those higher prices within a reasonable time. (Pl.'s Opp'n 14.)

Rohrer cites Dane's answers to Rohrer's Requests for Admissions in further support of its contention that the December 5, 2008 email was merely an invitation for offers and that Dane's purchase orders were offers. (Pl.'s Opp'n 13.) Dane's response to Request for Admission Number Three provides that "Defendant admits that from time to time Plaintiff issued some written confirmation order(s) to Defendant in response to *Defendant's offer to purchase Plaintiff's goods by way of written purchase orders*." (Pl.'s Opp'n Ex. H, Resp. to Req. for Admis. No. 3) (emphasis added). Dane's response to Request for Admission Number 15 provides that "Defendant admits it agreed to pay the balance of all payables due to Plaintiff that Defendant showed owing to Plaintiff as per *Defendant's offer(s) to purchase Plaintiff's goods, as is more particularly described in Defendant's written purchase orders*." (Pl.'s Opp'n Ex. H, Resp. to Req. for Admis. No. 15) (emphasis added).

For the following reasons, the Court finds that Dane has failed to show there is no genuine issue of material fact regarding whether Dane owes Rohrer a balance of $334,096.98 for the purchase of Rohrer's goods. Quantity is generally the only term that is required for contract formation. *H & M Landscaping Co., Inc. v. Abraxus Salt, L.L.C.*, No. 94268, 2010 WL 3441935, at *3 (Ohio Ct. App. Sept. 2, 2010) (citing Ohio Rev. Code § 1302.04, Official Comment One); *see Orchard Grp., Inc. v. Konica Med. Corp.*, 135 F.3d 421, 428 (6th Cir. 1998) (in analyzing Ohio Revised Code Section 1302.04, explaining that "Typically . . . if a contract lacks a quantity term, it is runs afoul

of the Statute of Frauds and is not enforceable.")  The quantity of goods to be purchased is material to whether the parties entered into a contract in December 2008 based on the prices in the December 5, 2008 email, and Dane has cited no evidence in its Motion for Partial Summary Judgment that the parties agreed that Rohrer would supply Dane a minimum of six to ten million goods at the prices indicated in the December 5, 2008 email.  Indeed, the only evidence that Dane cites throughout its entire Motion for Partial Summary Judgment is the December 5, 2008 email, and the email does not contain any provision that Rohrer would supply Dane a minimum of six to ten million goods at the email's prices.

Furthermore, whether Dane accepted Rohrer's alleged offer is material to whether the parties entered into a contract in December 2008 based on the prices in the December 5, 2008 email, and Dane has cited no evidence that it accepted Rohrer's alleged offer.  Dane has not cited to either the "written electronic communication" with which it allegedly accepted Rohrer's offer, or to any of its purchase orders.

Additionally, Rohrer cites to evidence supporting its contention that the parties never agreed to a minimum quantity of six to ten million goods either before or at the time Bill Duncan sent the December 5, 2008 email.  (*See* Hassan Dep. 24:1-5, 14-16, 29:1-5; Maruska Dep. 35:5-20; Duncan Decl. ¶ 8.)  Rohrer also cites to evidence supporting its contention that the prices set forth in the December 5, 2008 email were never intended to be available to Dane for a specific period of time.  (*See* Hassan Dep. 29:9-14; Duncan Decl. ¶ 8; Resp. to Req. for Admis. No. 12.)  Furthermore, Rohrer cites Dane's admissions wherein Dane describes its purchase orders as "offers."  (*See* Resp. to Req. for Admis. Nos. 3, 15.)

-10-

In sum, Dane has failed to show that there are no genuine issues of material fact regarding Count II of the Second Amended Complaint. Therefore, Dane's Motion for Partial Summary Judgment is denied.

### III. CONCLUSION

For the foregoing reasons, Dane's Motion for Partial Summary Judgement is DENIED.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: April 21, 2011